UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
DEC 15 2008
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

MICHAEL JAMES SHUMAKER
VERONIKA KATHLEEN SHUMAKER,

    Debtors.
_____/

Case No. 6:07-BK-05132-ABB

FIA CARD SERVICES, N.A.,

    Plaintiff,

vs.

VERONIKA KATHLEEN SHUMAKER,

    Defendant.
_____/

Adv. Pro. No. 6:07-AP-00193-ABB

## MEMORANDUM OPINION OVERRULING OBJECTION TO DISCHARGEABILITY OF DEBT

This matter came before the Court on the Complaint for Nondischargeability of Debt and for Money Judgment (Doc. No. 1) filed by FIA Card Services, N.A. ("FIA"), against Veronika Kathleen Shumaker, Debtor and Defendant herein ("Shumaker"), in which FIA objects to the discharge of debt pursuant to 11 U.S.C. Sections 523 (a)(2)(A) and (a)(2)(C).

An evidentiary hearing was held on November 21, 2008 at which counsel for FIA and Shumaker appeared. Testimony was heard from both Michael and Veronika Shumaker. The Parties were granted leave to submit supplemental legal memoranda and proposed findings of fact and conclusions of law in support of their positions.

The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and other documents filed herein, the evidence presented, hearing live argument and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

### *Background*

Shumaker filed the above-captioned joint Chapter 7 case on October 19, 2007 ("Petition Date"). FIA issued Shumaker a credit card prepetition, Account Number 4313024363236484.

FIA asserts the Shumaker's prepetition credit card purchases of $4,045.47 are nondischargeable (the "Purchases").[1] Shumaker does not dispute she made the Purchases, and she intended to pay the FIA indebtedness. Her husband was employed in real estate and she was working in a contractor's office at the time the charges were incurred. They were generally current on their obligations, and the charges were consistent with past expenditures. She had no intention of filing for bankruptcy when the Purchases were made, but circumstances changed. Her husband, Michael Shumaker, was a defendant in

---

[1] The alleged luxury transactions, as shown on the composite credit card statement (FIA Exhibit 3) are: 7/21/07 abc wines&spirits orlando $124.80; 7/27/07 houlihans orlando $105.69; 8/02/07 pike place fish market seattle $288.40; 8/02/07 city kitchens seattle $ 50.97; 8/02/07 anthony's pier 66 seattle $ 82.58; 8/02/07 anthony's pier 66 seattle $ 51.31; 8/03/07 exclusively washington seattle $ 45.63; 8/03/07 delaurenti specialty seattle $ 72.96; 8/03/07 sur la table pine seattle $ 60.93; 8/03/07 ye olde curiosity shop seattle $ 41.93; 8/03/07 elliott's oyster house seattle $159.37; 8/04/07 caesars casino restaurant las vegas $137.02; 8/06/07 airtran airline atlanta las vegas $340.00; 8/06/07 nordstroms las vegas $161.52; 8/06/07 ceasers casino mesa grill las vegas $ 84.25; 8/07/07 airtran airline las vegas atlanta $160.00; 8/07/07 ballys paris casino las vegas $192.95; 8/07/07 american airlines orlando chicago $402.79; 8/07/07 american airlines orlando chicago $402.79; 8/08/07 priceline.com rental $176.11; 8/08/07 priceline.com hotel $226.59; 8/08/07 american airlines orlando $180.00; 8/08/07 pete millers steakhouse, illinois $226.11; 8/10/07 blu restaurant illinois $137.74; and 8/11/07 hotel Orrington illinois $133.00.

2

significant litigation, resulting in the loss of his employment with a major bank. He consulted counsel regarding his possible individual bankruptcy. Shumaker first met her bankruptcy lawyer on August 16, 2007, during a consultation with him regarding Michael Shumaker's litigation and alternatives. Prior to that time, she had not contemplated bankruptcy. During that meeting, she realized that she could not pay her creditors and joined her husband in filing a joint bankruptcy petition.

### *Purchases and Services*

Shumaker was traveling in Washington State and Nevada with her family in early August 2007 on family business related to her brother's recent death. During that trip, Michael Shumaker's father died suddenly in Chicago and his brother suffered a heart attack and was hospitalized in Orlando. Shumaker returned from Las Vegas to Orlando with her husband, for him to attend to his brother, and then travelled to Chicago to participate in memorial services for her father-in-law. Shumaker's expenses for Airline tickets, hotels and meals all related to those family emergencies.

FIA established $1,268.23 of the Purchases are presumptively nondischargeable as luxury goods or services.[2] The Purchases were for more than $550.00 and made within ninety days of the Petition Date. The charges were not for goods or services reasonably required for Shumaker's support or maintenance. Shumaker met her burden and rebutted the nondischargeability presumption through the evidence presented.

Shumaker did not incur the charges by means of false pretenses, false representation or actual fraud. The circumstances surrounding the Purchases demonstrate

---

[2] Shumaker's charges at Pike Place Fish Market ($288.40); Exclusively Washington ($45.63); Delaurenti Specialty ($72.96); Sur la Table ($60.93); Elliotts Oyster House ($159.37); Caesers Casino ($137.02); Nordstroms Las Vegas ($161.52); Ballys Paris Casino ($192.95); and Pete Millers Steakhouse ($226.59) are in this category.

the charges were not debts incurred for goods or services for which Shumaker did not intend to pay.

Shumaker intended to pay FIA for the Purchases and did not incur the debt of $4,045.47 through fraud. FIA did not establish Shumaker made a false representation to deceive FIA in connection with the purchases. The charges of $4,045.47 are dischargeable and due to be discharged.

## CONCLUSIONS OF LAW

The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); Fed. R. Bankr. P. 4005 (2007). Exceptions to discharge "should be strictly construed against the creditor and liberally in favor of the debtor." Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

FIA contends the debt of $4,045.47 should be excepted from discharge pursuant to 11 U.S.C. Section 523(a)(2)(A), which provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

A plaintiff's burden of proof in a nondischargeability action is substantial. A plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). A plaintiff must establish: (i) the debtor made a false representation to

deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. Id.; In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996); City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). The objecting party must establish each of the four elements of fraud by a preponderance of the evidence. Grogan, 498 U.S. at 287, 291; In re Hunter, 210 B.R. 212, 214 (Bankr. M.D. Fla. 1997).

A presumption of fraud arises where luxury goods and services are purchased or cash advances are taken shortly before the filing of a bankruptcy case. Section 523(a)(2)(C), for purposes of Section 523(a)(2)(A), provides:

> (I) consumer debts owed to a single credit and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable; and
>
> (II) cash advances aggregating more than $750 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable; and
>
>     (ii) for purposes of this subparagraph—
>
>     (I) the terms "consumer", "credit", and "open end credit plan" have the same meaning as in section 103 of the Truth in Lending Act; and
>     (II) the term "luxury goods or services" does not include goods or services reasonably necessary for the support or maintenance of the Shumaker or a dependent of the Shumaker.

11 U.S.C. § 523(a)(2)(C). The presumptions are rebuttable. Hunter, 210 B.R. at 215-6. "Once the plaintiff has established the requirements of 11 U.S.C. § 523(a)(2)(C), the burden shifts to the defendant to rebut the presumption of fraud." In re Tabar, 220 B.R. 701, 704 (Bankr. M.D. Fla. 1998).

### *Purchases and Services*

FIA contends the Purchases totaling $4,045.47 made within ninety days of the Petition Date are for luxury goods and are presumptively nondischargeable pursuant to Section 523(a)(2)(C). The charges constitute consumer debts pursuant to 11 U.S.C. Section 101(8).

Goods that are reasonably necessary for Shumaker's support or maintenance, or a dependent, are not luxury goods. 11 U.S.C. § 523(a)(2)(C)(ii)(II). Circumstances surrounding the purchase are relevant to the determination whether the good is a luxury good. In re McDonald, 129 B.R. 279, 282-83 (Bankr. M.D. Fla. 1991). Relevant considerations are whether the good served a significant family function and if the transaction evidences any fiscal irresponsibility. Id. at 283.

FIA established $1,268.23 of the Purchases, described in footnote 2, are presumptively nondischargeable. Those charges were for more than $550.00 and made within ninety days of the Petition Date. The charges were not goods or services reasonably required for Shumaker's support or maintenance. Shumaker rebutted the nondischargeability presumption.

Shumaker established the remainder of the Purchases was reasonably required for support and maintenance, under the circumstances of the two deaths and one serious illness in her immediate family and the related travel. The services received served significant family functions, and the transactions do not evidence fiscal irresponsibility.

FIA was required to establish each of the nondischargeability elements of Section 523(a)(2)(A) in order to prevail on its Complaint. Shumaker intended to pay FIA for the Purchases when they were incurred, and did not incur the FIA obligation through fraud.

FIA did not establish Shumaker's intent to defraud FIA in connection with any of the Purchases. The obligation of $4,045.47 is discharged.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 15th day of December 2008.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge